AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK KERRIDAN, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) No. 05 C 752 |
| | ) |
| CITY OF PALOS HEIGHTS, | ) |
| ILLINOIS, GEORGE L. YOTT, JR., | ) |
| individually and in his official capacity, | ) |
| ROBERT STERBA, individually | ) |
| and in his official capacity, and | ) |
| WILLIAM TURNER, individually | ) |
| and in his official capacity, | ) |
| | ) |
| Defendants/Counter-Plaintiffs. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss Counts II and VIII. This matter is also before the court on Plaintiff/Counter-Defendant's Mark Kerridan's ("Kerridan") motion to dismiss the breach of contract counter-claim. For the reasons stated below, we deny all of the above motions.

## BACKGROUND

Kerridan alleges that he worked as a police officer for the Palos Heights

Police Department ("Police Department") from March of 1986 to January 23, 2004. On January 23, 2004, Kerridan allegedly resigned and his resignation was tendered in accordance with a "Memorandum of Agreement and Release" ("Agreement"), which was signed by Kerridan and Defendant George L. Yott ("Yott"), the Police Department Chief of Police. According to Kerridan, under the Agreement, he would tender his resignation and in exchange the Police Department agreed to remove from his personnel file any pending investigations, charges, or disciplinary actions and to keep such records confidential. The Agreement allegedly further provided that if the Police Department was contacted by a prospective employer of Kerridan, the Police Department would issue only a general letter of reference or a general verbal statement.

Kerridan alleges that he is a member of the United States Navy Reserves ("Navy") and that on March 16, 2004, he was offered deployment to Iraq. Kerridan alleges that Yott and Defendant Robert Sterba ("Sterba") provided the Navy with information regarding Kerridan's past work misconduct and other information covered under the Agreement. Kerridan further alleges that his deployment was cancelled due to information provided to the Navy by the Police Department and that the Navy informed Kerridan that it was "in the process of separating him from the Navy due to the 'commission of a serious offense.'" (Compl. Par. 15). According to Kerridan, he was appointed a Judge Advocate General Officer and after an investigation into the charges against him, the Navy found that there were no

grounds to dismiss Kerridan from the Navy. Kerridan claims, however, that the investigation caused him to miss his deployment to Iraq. Kerridan also claims that he subsequently applied for employment with the Police Department of the City of Mesa, Arizona, the Arizona Department of Corrections, and the Transportation Security Administration, and that he was not hired because Defendants provided the prospective employers with personnel information relating to Kerridan in violation of the Agreement. Kerridan brought the instant action and his complaint includes a count alleging a violation of 42 U.S.C. § 1983 ("Section 1983") (Count I), a count alleging a violation of 42 U.S.C. § 1985 ("Section 1985") (Count II), a breach of contract claim (Count III), a defamation claim (Count IV), a tortious interference with prospective economic advantage ("TIPEA") claim (Count V), an Intentional Infliction of Emotional Distress ("IIED") claim (Count VI), an invasion of privacy claim (Count VII), and a common law conspiracy claim (Count VIII). Defendants have also filed a breach of contract counter-claim. Defendants now move to dismiss the Section 1985 claim (Count II) and the common law conspiracy claim (Count VIII). Kerridan has moved to dismiss the counter-claim.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the

plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with

4

at least minimal notice of the claim," *Id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251.

## DISCUSSION

### I. Motion to Dismiss the Conspiracy Claims (Counts II and VIII)

Defendants seek a dismissal of the Section 1985 conspiracy claim (Count II) and the common law conspiracy claim (Count VIII). Kerridan states in his response to the motion to dismiss that he is "voluntarily withdrawing his request for relief under 42 U.S.C. § 1985(3) (Count II)." (D Dis Ans. 1 n.1). We grant Kerridan's request to voluntarily dismiss Count II and deny Defendants' motion to dismiss Count II as moot.

We note that in regard to the common law conspiracy claim (Count VIII), Kerridan devotes a portion of his answer to the motion to dismiss to arguing that he has alleged sufficient facts to state a common law conspiracy claim. However, we need not address the issue of whether or not Kerridan has stated a valid claim since Defendants' arguments in their motion to dismiss pertaining to an insufficiency in the facts in the complaint were solely focused upon the Section 1985 claim and not upon the common law conspiracy claim. (D Dis 3-4).

5

Defendants argue that the court should dismiss the common law conspiracy claim because the intra-corporate conspiracy doctrine precludes liability for such a claim. The intra-corporate conspiracy doctrine was first recognized in *Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir.1972) and its viability was reaffirmed in *Travis v. Gary Community Mental Health Center,* 921 F.2d 108, 109-11 (7th Cir.1990). The essence of the doctrine is that "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." *Wright v. Illinois Dept. of Children & Family Services,* 40 F.3d 1492, 1507-08 (7th Cir.1994)(also stating that the court had previously "rejected the notion that corporate managers become conspirators because they engaged in more that one discriminatory or retaliatory act"). *see also Dombrowski v. Dowling,* 459 F.2d 190, 196 (7th Cir. 1972)(stating that under the intra-corporate conspiracy doctrine "if the challenged conduct is essentially a single act of discrimination by a single . . . entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute" a conspiracy). The Seventh Circuit has extended the application of the intra-corporate conspiracy doctrine "to bar a § 1985(2) claim against individual members of a single *government* entity." *Wright,* 40 F.3d at 1508 (emphasis in original). The Seventh Circuit has stated in dicta that the intra-corporate conspiracy doctrine does not apply "where corporate employees are shown to have been motivated solely by personal bias." *Hartman v. Board of Trustees of Community*

6

*College Dist. No. 508, Cook County, Ill.*, 4 F.3d 465, 469-70 (7th Cir. 1993). Although in some cases the courts focus on corporate managers, the doctrine applies to "supervisors and subordinates, so long as all are working in the corporation's (or governmental entity) interest." *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 633 (7th Cir. 1999).

Defendants contend that Kerridan fails to allege that any of the individual Defendants were acting outside their official capacities when they engaged in the alleged misconduct. Defendants thus argue that there could technically be no conspiracy between the individual Defendants since they all worked for the same municipal entity. Kerridan responds by arguing that the common law conspiracy claim is based upon Illinois torts that are independent of the individual Defendants' duties created by their employment. Kerridan argues that Defendants had an independent duty under Illinois common law, apart from their employment, to refrain from engaging in wrongdoing such as defaming Kerridan and intentionally causing Kerridan severe emotional distress.

In the complaint, Kerridan alleges that Defendants provided Kerridan's prospective employers with information about his past work performance. There is no allegation that it was Defendants that initiated contact with Kerridan's prospective employers. Although the complaint does not specifically state that the prospective employers initiated the contact with the Police Department, it is the only reasonable inference that can be drawn from the allegations in the complaint.

7

Kerridan alleges that Defendants provided information to several prospective employers around the country. In order for Defendants to have initiated contact with those employers, Defendants would have had to follow Kerridan around or somehow keep surveillance on his activities in order to know where he was applying for jobs. No allegations in the complaint allege such conduct by Defendants or permit such an inference. Thus, when Defendants provided the information to Kerridan's prospective employers, Defendants were providing information about a past employee as they would to any employer that called making such an inquiry.

Kerridan has made further allegations, however, that clearly indicate that the individual Defendants went above and beyond their official duties and acted solely in their own interest. In the defamation claim (Count VI), Kerridan specifically alleges that Defendants "made false and defamatory statements" about Kerridan to prospective employers and that Defendants did so with malice, "knowing that they were false, or with reckless disregard for the truth." (Compl. Par. 42). Kerridan further alleges that "[t]he false representations were made with the purpose and intention on the part of Defendants to hinder or prevent Plaintiff from securing employment." (Compl. Par. 42). Thus, according to Kerridan, Defendants did more than simply release damning information about Kerridan from his personnel file. Defendants allegedly gave the information to the prospective employers specifically in order to prevent Kerridan from obtaining employment. Also, Kerridan alleges that not only did Defendants give out information about Kerridan, Defendants gave

out false information about Kerridan knowing that the information was false or that it was most likely false. We note for the purposes of the instant motion to dismiss we are required to accept as true Kerridan's allegations. *Thompson*, 300 F.3d at 753. Kerridan has made sufficient allegations that indicate that Defendants acted out of their personal bias for Kerridan rather than in the interest of the Police Department. Therefore, we deny Defendants' motion to dismiss the common law conspiracy claim (Count VIII).

## II. Motion to Dismiss Counter-Claim

Kerridan seeks a dismissal of the counter-claim. The counter-claim includes a breach of contract claim based upon the filing of the instant action by Kerridan. Kerridan first argues in his motion to dismiss the counter-claim that the Agreement provided that he waived his right to bring claims only as to claims that he had available to him at the time of the execution of the Agreement. According to Kerridan, "[t]he Agreement does not contractually bar Plaintiff from filing suit against Defendants for causes of action which arose after the January 23, 2004 Agreement." (CC Dis. 3). Kerridan's arguments reach far beyond whether there are sufficient allegations in the counter-claim to state a claim and address the merits of his position in opposition to the counter-claim. Whether or not Kerridan violated any provision of the Agreement by bringing the instant action cannot be determined at this juncture and thus Kerridan's arguments pertaining to the merits of the

counter-claim are premature.

Kerridan next argues that Defendants have failed to allege sufficient facts to state a breach of contract claim. Kerridan improperly focuses upon the elements of a breach of contract claim seeking to require Defendants to present facts to support each element of the claim. However, such pleading is not required under the federal notice pleading standard. *See Head v. Chicago School Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000)(stating that the plaintiff was not required under the notice pleading standard to "plead[] sufficient facts to establish the legal elements of his claim"); *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later").

Kerridan also argues that Defendants are required to specifically allege that they performed their part of the contract and that their failure to do so mandates a dismissal of the counter-claim. In support of such a proposition, Kerridan cites *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). However, Kerridan entirely misstates the holding in *Priebe*. The court in *Priebe* was not addressing the federal pleading requirements for a breach of contract claim. *Id.* at 587. The court was merely quoting an Illinois state court case laying out the Illinois pleading standard. In fact the court in *Priebe* was reviewing a federal district court's ruling on a summary judgment motion. *Id.* In addition, the court in *Priebe* specifically

stated it "rest[ed] [its] decision on the breach element" rather than on a finding that the plaintiff had failed to perform his obligations under the contract. *Id.*

Kerridan also complains that the facts included in the counter-claim fail to adequately detail the breach of contract claim and the legal basis for the claim. The counter-claim filed by Defendants does not point to any particular provision of the Agreement as a basis for their counter-claim. Defendants allege that the "instant frivolous complaint before this Court by the plaintiff/counter-defendant Kerridan, and in particular Count III of the pleadings, was in and of itself, a breach of the contractual agreement, proximately causing damage to defendants." (C. Claim Par. 18). Defendants have provided sufficient allegations to state a breach of contract claim. They allege that the Police Department entered into the Agreement with Kerridan. (CC Par. 14). Defendants also allege that Kerridan filed the instant action against Defendants. (CC Par. 15). Finally, Defendants assert that the filing of the instant action by Kerridan "was, in and of itself," a breach of the provisions of the Agreement. (CC Par. 18). Such allegations are sufficient to provide Kerridan with notice of the claim against him under the federal notice pleading standard. Defendants are only obligated to provide the operative facts and are not required to explain to Kerridan their legal positions in regards to which provisions of the Agreement were violated by Kerridan and the legal bases for their contention that Kerridan's actions breached the Agreement. *See Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992)(stating that under the federal notice

pleading standard "[i]nstead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations"); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)(stating that plaintiffs "don't have to plead legal theories"). Therefore, we deny Kerridan's motion to dismiss the counter-claim.

## CONCLUSION

Based on the foregoing analysis, we deny the motion to dismiss the common law conspiracy claim (Count VIII) and deny as moot the motion to dismiss the Section 1985 claim (Count II). We also grant Kerridan's motion to voluntarily dismiss the Section 1985 claim (Count II) and deny Kerridan's motion to dismiss the counter-claim.

                                                                         _____
                                                                         Samuel Der-Yeghiayan
                                                                         United States District Court Judge

Dated: September 15, 2005